# Supreme Court of Texas

No. 20-0328

In the Guardianship of James E. Fairley

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued September 30, 2021**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Boyd, Justice Busby, Justice Bland, and Justice Young joined.

JUSTICE DEVINE filed a dissenting opinion, in which Justice Blacklock joined.

After Mauricette Fairley acted as her husband's guardian for the last three years of his life, their daughter Juliette Fairley—the petitioner here—asks us to void all orders entered in the guardianship proceeding because the proposed ward, her now-deceased father, was personally served by a private process server. Specifically, Juliette claims personal service on her father by a private process server was insufficient to vest jurisdiction in the probate court because, she asserts, Chapter 1051 of the Estates Code requires a proposed ward in Texas to be personally served by a sheriff, constable, or other elected officeholder.

We hold the probate court's orders are not void. While the Estates Code directs that personal service on a ward be effected in a particular manner, it does not reflect an intent by the Legislature that the failure to satisfy each technical requirement—as opposed to the failure to personally serve the ward altogether—is jurisdictional. Thus, we hold that a technical defect in personal service on the ward does not deprive the probate court of subject-matter jurisdiction or personal jurisdiction over the ward where the ward is personally served and participates in the proceedings through counsel without objection. We affirm the court of appeals' judgment.

## I.    Background

### *Juliette seeks a guardianship in Texas, and her application is dismissed.*

This dispute between James Fairley's wife, Mauricette, and his daughter, Juliette, has a tortured procedural history and has spanned a decade. The parties first involved the courts in Bexar County in 2011, when James was 81 and Juliette alleged that he needed a guardian. The probate court appointed a guardian ad litem who determined a guardianship was not necessary, so that proceeding was closed.[1] The following year, Juliette filed another application asking to be appointed James's permanent guardian. But Juliette agreed to nonsuit her application in exchange for certain promises regarding both James's care and Juliette's access to James. The probate court thus entered an

---

[1] None of the pleadings or orders from this initial application are part of the record on appeal. Mauricette asserts the guardianship was deemed unnecessary because James was adequately protected through various powers of attorney James had given to Mauricette.

2

order dismissing Juliette's second guardianship application in September 2014.

***Juliette moves James to New York, and dueling proceedings are filed in Texas and New York.***

One month after the Bexar County probate court dismissed her application to serve as James's permanent guardian, Juliette took her father from his San Antonio assisted-living facility to New York, where she lived. Mauricette then requested that a Bexar County probate court appoint her as James's temporary guardian under Estates Code Section 1251.001.[2] Mauricette alleged that Juliette had unlawfully removed James from his residence and defrauded him into signing powers of attorney, which Juliette used to take money from James's bank account. Mauricette claimed that Juliette endangered James's health and safety and that Mauricette's appointment as James's temporary guardian was necessary for his protection.

James was personally served with this temporary-guardianship application in New York in November 2014. According to an Affidavit of Service signed by Sara M. Clark, she served James with the application and citation at a New York residence "by personally delivering and leaving the same with JAMES E. FAIRLEY." The affidavit describes James's physical appearance and location within the residence where he was served. In her affidavit, Clark states that she is over the age of 18 and is "not a party to this action."

---

[2] Section 1251.001 of the Estates Code authorizes courts to appoint a temporary guardian based on substantial evidence that a person may be incapacitated and probable cause that the immediate appointment of a guardian is required. TEX. EST. CODE § 1251.001(a).

3

Three days after Mauricette filed her temporary-guardianship application in Texas, Juliette filed a petition in New York state court asking that she be appointed James's guardian. Mauricette opposed, and the New York court held a hearing on December 1, 2014. After determining that James was "able and willing to attend," the New York court recessed the hearing to allow James to be brought to the courthouse. The court received evidence from a court-appointed evaluator who personally observed the "warm and affectionate" reunion between James and Mauricette at the courthouse. The New York court appointed Mauricette and the court evaluator "special temporary co-guardians" of James for the limited purpose of returning James to Texas so the Bexar County probate court could resolve any further dispute over the guardianship. The New York court also revoked the powers of attorney in favor of Juliette and reinstated those in favor of Mauricette.

### Mauricette files an application for permanent guardianship of James.

Back in Texas, on December 8, 2014, Mauricette filed (in the same probate court and under the same cause number as her application for temporary guardianship) an application seeking appointment as James's permanent guardian.[3] Mauricette alleged that James was totally incapacitated and that Juliette was a threat to his welfare.

---

[3] Section 1101.151 of the Estates Code authorizes courts to appoint a guardian with full authority over a person who is found to be totally without capacity to care for himself, manage his property, operate a motor vehicle, make personal decisions regarding residence, and vote in a public election. TEX. EST. CODE § 1101.151(a).

4

Shortly after Mauricette filed her application for permanent guardianship, the probate court held a hearing on Mauricette's application for temporary guardianship. James was represented by a court-appointed attorney ad litem, who had filed an answer on James's behalf in this proceeding and had served as James's attorney ad litem during the 2012 proceedings in which Juliette sought to be appointed as James's guardian. Following an evidentiary hearing, the probate court appointed Mauricette as James's temporary guardian pending the resolution of Juliette's contest to the application for a permanent guardianship. *See* TEX. EST. CODE § 1251.052(b)(1) (authorizing a temporary guardian to serve until the conclusion of the hearing contesting an application for guardianship). The probate court also ordered that James's attorney ad litem "continue[] . . . to represent the interests of the Proposed Ward during the pendency of this contest."

One month later, James was personally served with the application for permanent guardianship at the San Antonio assisted-living facility to which he had returned. The return of citation shows that James was personally served with the application and citation by a Texas licensed private process server.

### *The probate court appoints Mauricette as James's permanent guardian.*

Mauricette served as James's temporary guardian under the probate court's order for most of 2015. Then, following a November 2015 hearing, the probate court appointed Mauricette as James's permanent guardian. The probate court found James was "totally incapacitated" and that it was in his best interest that Mauricette be appointed

5

guardian of his person. The probate court's order notes that James "appeared by and through his court appointed attorney ad litem."

***Juliette challenges the appointment order through appeal and mandamus.***

Juliette appealed the probate court's order appointing Mauricette as James's permanent guardian. She argued the probate court abused its discretion by requiring her to deposit $20,000 as security for the probable costs of the guardianship proceeding and then dismissing her cross-application when she failed to do so. The court of appeals affirmed, and we denied Juliette's petition for review. *In re Guardianship of Fairley*, No. 04-16-00096-CV, 2017 WL 188103 (Tex. App.—San Antonio Jan. 18, 2017, pet. denied).

Juliette then filed a pro se petition for writ of mandamus in March 2018. She argued that the order requiring her to pay $20,000 as security and later orders based on her failure to comply were void because they violated "the Texas Rules of Civil Procedure, the 8th Amendment, the Due Process and Equal Protection Clause [and] the Texas Estates Code." The court of appeals denied Juliette's mandamus petition. *In re Guardianship of Fairley*, No. 04-18-00190-CV, 2018 WL 1610924 (Tex. App.—San Antonio Apr. 4, 2018, orig. proceeding).

***Juliette files a mandamus petition in this Court, asserting the probate court never acquired jurisdiction over James.***

Juliette filed a pro se petition for writ of mandamus in this Court in June 2018, then retained new counsel. Because some of the challenged orders were issued by probate court judges who no longer presided over the case, the Court abated the mandamus proceeding under Rule of Appellate Procedure 7.2(b) to allow the current judge to

6

reconsider those orders. Juliette then filed in the probate court a motion to reconsider in which she argued, for the first time, that *all* the probate court's orders after September 2014 were void because the court never obtained jurisdiction over James. Specifically, Juliette argued that Mauricette's applications for guardianship were served on James by private process servers in violation of Section 1051.103 of the Estates Code, which Juliette contended required James to be served by "[t]he sheriff or other officer." TEX. EST. CODE § 1051.103(a)(1). The probate court denied Juliette's motion, finding that "citation was properly served upon [James] in this cause as required by the TEXAS ESTATES CODE and the Texas Rules of Civil Procedure [and] that this Court has jurisdiction over the pending guardianship proceeding in this Cause."

### *James dies, and Juliette's mandamus petition is denied.*

After the probate court denied reconsideration, we reinstated the mandamus proceeding, and Juliette filed a redrawn petition asserting that every order issued after September 2014—the date her 2012 application was dismissed—was void due to what she contends was improper service of Mauricette's guardianship applications. James died soon thereafter, and Mauricette then argued that his death rendered moot any dispute over the guardianship orders. We denied the mandamus petition in January 2019.

### *Juliette files a wrongful-death suit, which is transferred to the probate court.*

Juliette sued Mauricette and Mauricette's other daughter (and James's step-daughter), Dorothy, in Bexar County district court for wrongful death and to enjoin embalming or cremation of James's body.

7

On Mauricette and Dorothy's motion, the probate court transferred the wrongful-death suit to itself under Estates Code Section 1022.007(a).[4]

***Mauricette requests dismissal of the wrongful-death suit, and Juliette files a TCPA motion.***

Following the transfer and consolidation of the wrongful-death suit into the guardianship proceeding, Mauricette and Dorothy sought dismissal of Juliette's claims under Rule of Civil Procedure 91a. Juliette responded with a motion to dismiss under the Texas Citizens Participation Act (TCPA), TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011, in which she asked the probate court to vacate the transfer order and dismiss Mauricette's Rule 91a motion. Juliette argued that the probate court never acquired jurisdiction over the guardianship proceeding. She also argued that the TCPA applied both to Mauricette's motion to transfer and the Rule 91a motion to dismiss and that Mauricette failed

---

[4] Section 1022.007(a) of the Estates Code provides:

A judge of a statutory probate court, on the motion of a party to the action or of a person interested in the guardianship, may:

(1) transfer to the judge's court from a district, county, or statutory court a cause of action that is a matter related to a guardianship proceeding pending in the statutory probate court, including a cause of action that is a matter related to a guardianship proceeding pending in the statutory probate court and in which the guardian, ward, or proposed ward in the pending guardianship proceeding is a party; and

(2) consolidate the transferred cause of action with the guardianship proceeding to which it relates and any other proceedings in the statutory probate court that are related to the guardianship proceeding.

TEX. EST. CODE § 1022.007(a).

to establish by clear and specific evidence a prima facie case for each essential element of the claims in those motions.

### *The probate court denies Juliette's TCPA motion, and the court of appeals affirms.*

The probate court denied Juliette's motion to dismiss under the TCPA, and Juliette appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (allowing an interlocutory appeal from an order denying a motion to dismiss under the TCPA). The court of appeals affirmed. 604 S.W.3d 450 (Tex. App.—San Antonio 2020). The court first concluded that service of Mauricette's application for permanent guardianship by a private process server complied with Estates Code Section 1051.103. *Id.* at 457. The court also concluded that neither Mauricette's motion to transfer the wrongful-death suit nor her Rule 91a motion to dismiss was a "legal action" under the TCPA and, therefore, the probate court did not err in denying Juliette's motion to dismiss. *Id.* at 457–60.

Juliette petitioned for review in this Court. Here, she does not challenge the court of appeals' ruling on her TCPA motion. Rather, she advances two jurisdictional arguments: either (1) James's death caused the probate court to lose jurisdiction and prevented it from transferring Juliette's wrongful-death case to itself or (2) the probate court lacked jurisdiction and all orders in the guardianship proceeding are void because James was not served by a sheriff, constable, or "other officer," which Juliette interprets to exclude private process servers.

## II.    Jurisdictional Principles

Juliette urges us to hold that all the probate court's orders issued after September 2014 are "void for lack of jurisdiction over James

9

Fairley." Because the parties' briefing does not consistently distinguish between them, we begin by setting forth some principles of the different types of jurisdiction at issue here.

## A.    Subject-matter jurisdiction

To issue a valid and binding judgment or order, a court must have both subject-matter jurisdiction over a case and personal jurisdiction over the party it purports to bind. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). Subject-matter jurisdiction refers to a court's statutory or constitutional power to adjudicate a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The subject-matter jurisdiction of Texas courts derives solely from the Texas Constitution and state statutes. *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 459–60 (Tex. 2011). Because subject-matter jurisdiction cannot be conferred on a court by consent or waiver, a judgment is never considered final if the court that issued it lacked subject-matter jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000). Partly out of a desire to "reduce the vulnerability of final judgments to attack," *id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e (AM. L. INST. 1982)), we are reluctant to conclude that a statutory requirement affects a court's subject-matter jurisdiction absent clear legislative intent to that effect. *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009).

But courts do lack subject-matter jurisdiction to decide a moot controversy. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). The prohibition against deciding moot controversies is rooted in the separation-of-powers doctrine that prohibits courts from rendering

10

advisory opinions. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (citing TEX. CONST. art. II, § 1). A suit may become moot at any time, including on appeal. *Heckman v. Williamson County*, 369 S.W.3d 137, 166 (Tex. 2012). A case is moot when a live controversy no longer exists or the parties have no legally cognizable interest in the outcome. *City of Krum v. Rice*, 543 S.W.3d 747, 749 (Tex. 2017).

## B. Personal jurisdiction

In contrast to subject-matter jurisdiction, personal jurisdiction concerns the court's power to bind a particular person or party to a judgment. *Luciano*, 625 S.W.3d at 8. Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court, and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985). Establishing personal jurisdiction over a party requires "citation issued and served in a manner provided for by law." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). However, unlike challenges to subject-matter jurisdiction, objections to personal jurisdiction generally can be waived, and a party may consent to the personal jurisdiction of a court. *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014).

## III. Analysis

Juliette brought an interlocutory appeal from the probate court's order denying her TCPA motion, which sought dismissal of Mauricette and Dorothy's Rule 91a motion against her wrongful-death suit. She asserts this order and the court's previous order transferring that suit

11

to the probate court—as well as all orders issued after September 2014—are void because James was never properly served with a guardianship application.

The parties' briefs principally address the questions of whether service on James complied with Estates Code Chapter 1051 and whether defective service deprived the probate court of personal jurisdiction over James. Before considering those questions, however, we first address two threshold issues relating to subject-matter jurisdiction: Mauricette's claim that James's death rendered this appeal moot; and Juliette's related claim that James's death terminated the guardianship and the probate court's subject-matter jurisdiction, such that any orders entered after his death are void.

## A. Did James's death moot the appeal?

Mauricette argues James's death in December 2018 mooted Juliette's appeal. We disagree. As noted, a case is moot when a live controversy no longer exists. *City of Krum*, 543 S.W.3d at 749. Juliette contends that the probate court lacked jurisdiction to transfer to itself her wrongful-death suit. If Juliette is correct, the result would be a reinstatement of Juliette's wrongful-death suit in the district court. Juliette's appeal thus presents a live controversy notwithstanding James's death: whether the district court is the proper court to adjudicate her wrongful-death suit. Because this live controversy remains, we reject Mauricette's argument that James's death rendered this appeal moot. *See id.*

12

**B. Did James's death end the guardianship proceeding and thereby deprive the probate court of subject-matter jurisdiction?**

Juliette advances a different theory of how James's death deprived the probate court of subject-matter jurisdiction to transfer the wrongful-death suit to itself. She argues that James's death terminated the guardianship over him and, therefore, there was no longer a "guardianship proceeding pending" into which the probate court could transfer her wrongful-death suit. *See* TEX. EST. CODE § 1022.007(a) (authorizing statutory probate court to transfer to itself claims related to "a guardianship proceeding pending in" that court). We disagree.

To initiate a proceeding to appoint a guardian, a person must file a written application in the proper court. TEX. EST. CODE § 1101.001(a). Texas law permits the creation of a guardianship of a person or an estate, or both. *See id.* §§ 1002.012(b) (defining "guardian" to include both the guardian of an incapacitated person and the guardian of an incapacitated person's estate), 1101.001(b)(3) (requiring the application to state whether it is for guardianship of the person or estate, or both). It is undisputed that the applications in this case sought only guardianship of a person—James—and not guardianship of James's estate.

The Legislature created the statutory probate court in Bexar County from which this appeal arises. *See* TEX. GOV'T CODE § 25.0171(c). The Legislature gives statutory probate courts original jurisdiction over guardianship proceedings. TEX. EST. CODE § 1022.002(c); *see also* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of

13

all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."). The Estates Code defines a "guardianship proceeding" as "a matter or proceeding related to a guardianship or any other matter covered by this title," including "the appointment of a guardian of a minor or other incapacitated person" and "an application, petition, or motion regarding guardianship or a substitute for guardianship under this title." TEX. EST. CODE § 1002.015.

Section 1022.002 of the Estates Code expressly states when a guardianship proceeding begins and ends. A guardianship proceeding begins with "the filing of the application for the appointment of a guardian of the estate or person, or both." *Id.* § 1022.002(d). It ends when "the guardianship is settled and closed under this chapter." *Id.* Accordingly, the probate court acquired subject-matter jurisdiction over this guardianship proceeding when Mauricette filed her first application for guardianship, seeking a temporary guardianship. *See id.* § 1002.012(a) (defining "guardian" to include a person appointed as a temporary guardian).

A ward's death will necessarily bring the guardianship of the person to an end. *See Zipp v. Wuemling*, 218 S.W.3d 71, 74 (Tex. 2007) ("It is axiomatic that, with the death of the ward, the guardianship of the person must end."). But the guardianship proceeding does not automatically terminate on the ward's death. Instead, the probate court's jurisdiction continues until the court settles and closes the guardianship and discharges the guardian. *See Easterline v. Bean*, 49

14

S.W.2d 427, 428 (Tex. 1932) (stating that a ward's death causes the probate court to lose jurisdiction over the guardianship matter "save and except that the guardianship shall be immediately settled and closed, and the guardian discharged"). Consistent with this, the Estates Code expressly authorizes a guardian to take certain actions on behalf of a deceased ward before the closing of the guardianship. *See* TEX. EST. CODE §§ 1204.051 (authorizing a guardian to make funeral arrangements "[b]efore a guardianship of the person . . . is closed on the ward's death"), 1204.108(a) (requiring a guardian of the person to deliver a deceased ward's property to the personal representative of the ward's estate or other person entitled to the property).

Here, it is undisputed that the probate court had not yet settled and closed the guardianship proceeding at the time it transferred Juliette's wrongful-death suit to itself. *See* TEX. EST. CODE § 1204.001 (establishing the procedures for settling and closing a guardianship). Thus, contrary to Juliette's argument, there remained a "guardianship proceeding pending" into which the probate court could have transferred the wrongful-death suit. Aside from claiming the guardianship proceeding automatically terminated on James's death, Juliette does not challenge the probate court's authority under the Estates Code to transfer the wrongful-death suit to itself.[5] We accordingly conclude that

---

[5] Of course, a probate court deciding whether to transfer a related cause of action under Section 1022.007 should take into account the death of the ward and the forthcoming closure of the guardianship proceeding, as well as whether there is a pending or imminent probate proceeding into which the cause of action should be transferred instead.

15

James's death did not deprive the probate court of subject-matter jurisdiction to enter the transfer order.

## C.      Service of citation

Juliette contends the probate court never acquired personal jurisdiction over James because service on James did not comply with Chapter 1051 of the Estates Code. Therefore, according to Juliette, every order issued by the probate court after September 2014 is void. We address whether service of the applications for guardianship complied with the requirements in the Estates Code, then turn to Juliette's contention that any defect in service would deprive the probate court of personal jurisdiction and render its orders void.

### 1.      Was James served in accordance with the Estates Code?

Chapter 1051 of the Estates Code governs the issuance of notice and service of citation in guardianship proceedings. Two sections within Chapter 1051 are particularly important here. Section 1051.103, titled "Service of Citation for Application for Guardianship," identifies five categories of persons who must be personally served with the application and citation. TEX. EST. CODE § 1051.103(a)(1)–(5). As relevant here, that section provides:

> (a)      The sheriff or other officer shall personally serve citation to appear and answer an application for guardianship on:
>
> > (1)      a proposed ward who is 12 years of age or older . . . .

*Id.* § 1051.103(a)(1).

16

Section 1051.051, titled "Personal Service," addresses the manner in which personal service of citation or notice is effected in a variety of different circumstances:

(a) Except as otherwise provided by Subsection (b), if personal service of citation or notice is required, the citation or notice must be served on the attorney of record for the person to be cited or notified. Notwithstanding the requirement of personal service, service may be made on that attorney by any method specified by Section 1051.055 for service on an attorney of record.

(b) If the person to be cited or notified does not have an attorney of record in the proceeding, or if an attempt to serve the person's attorney is unsuccessful:

(1) the sheriff or constable shall serve the citation or notice by delivering a copy of the citation or notice to the person to be cited or notified, in person, if the person to whom the citation or notice is directed is in this state; or

(2) a disinterested person competent to make an oath that the citation or notice was served may serve the citation or notice, if the person to be cited or notified is absent from or is not a resident of this state.

*Id.* § 1051.051(a), (b).

It is undisputed that Section 1051.103(a)(1) required personal service of citation for an application for guardianship on James because he was a proposed ward older than twelve. It is also undisputed that James was personally served with both the application for temporary guardianship and the application for permanent guardianship. However, the parties part ways on the question of *who* was required to serve the citation and application. To answer that question, we must

17

first determine whether Section 1051.103 or Section 1051.051 controls this question.

### a. Which statute dictates who must serve the citation?

Section 1051.103(a) states that "[t]he sheriff or other officer" shall personally serve citation of an application for guardianship on those for whom personal service is required, including a proposed ward who is twelve or older. Throughout the proceedings below, and in their briefing to this Court, both parties appear to assume this section governs the question of who should serve the application and citation. The parties' briefing thus focuses on whether "other officer" as used in Section 1051.103(a) includes a private process server. The court of appeals rejected Juliette's contention that "officer" as used in Section 1051.103(a) is limited to a sheriff, constable, or other elected official and concluded that "James was served in conformity with section 1051.103(a)." 604 S.W.3d at 457.

Amicus Texas College of Probate Judges (TCPJ) contends that the court of appeals should have looked instead to Section 1051.051. According to TCPJ, Section 1051.051 is the more specific statute with respect to who is authorized to serve citation in a guardianship proceeding. Juliette appeared to adopt this position at oral argument.

We agree that Section 1051.051 is the controlling statute here. Section 1051.103(a) identifies those individuals who must *receive* personal service of an application for guardianship. Section 1051.051 specifies *who may serve* when personal service is required and *how* service must be effected.

Section 1051.051 sets forth three different groups of persons who may serve, depending on whether the person to be served is represented by counsel and where the person is located. Under subsection (a), if the person to be served has an attorney of record in the proceeding, the citation must be served on that attorney. TEX. EST. CODE § 1051.051(a). Section 1051.051(a) then refers to Section 1051.055 for the method of service on an attorney. *Id.* ("Notwithstanding the requirement of personal service, service may be made on that attorney by any method specified by Section 1051.055 for service on an attorney of record."). Section 1051.055(c) provides that a citation may be served on an attorney by (1) another party, (2) another party's attorney, (3) a sheriff or constable, or (4) any person competent to testify. *Id.* § 1051.055(c).

Subsection (b) applies if the person to be served does not have an attorney of record or if service on the attorney is unsuccessful. *Id.* § 1051.051(b). In that case, the method of service is determined by the location of the person who must be served. If that person is in Texas, subsection (b)(1) provides that "the sheriff or constable shall serve the citation" by delivering a copy in person. *Id.* § 1051.051(b)(1). If the person to be served is either absent from or not a resident of Texas, however, subsection (b)(2) provides that citation may be served by "a disinterested person competent to make an oath that the citation . . . was served." *Id.* § 1051.051(b)(2).

Nothing in the text of Section 1051.103(a) suggests that the reference to service by a sheriff or "other officer" (an otherwise undefined term) was itself intended to limit those who could serve citation for guardianship applications. We instead read "other officer" as a

19

reference to those persons who are authorized to serve citation elsewhere in the Estates Code. As noted above, depending on the circumstances, Section 1051.051 expressly allows for service of citation to be performed by a sheriff or constable, a disinterested person competent to make an oath, another party, another party's attorney, or any person competent to testify. Accordingly, we conclude that, for those persons entitled to personal service of an application for guardianship under Section 1051.103(a), the method of service (including who must serve the application and citation) must comply with Section 1051.051.

### b. Did service of the guardianship applications on James comply with Estates Code Section 1051.051?

Having concluded that Section 1051.051 governs who must serve a citation and application for guardianship, we turn to whether service of each of the two applications for guardianship in this case—one served in New York, one in Texas—satisfied its requirements.

Focusing on Section 1051.103(a), the court of appeals concluded that a private process server was an "other officer" authorized to serve an application for guardianship because a 1994 Bexar County probate court administrative order permitted licensed private process servers to serve process in the probate courts. 604 S.W.3d at 457. The court also relied on Rule of Civil Procedure 103, the general rule governing service of process, which authorizes service by "any person authorized by law or by written order of the court." TEX. R. CIV. P. 103. But neither an order from the Bexar County probate courts nor a rule of procedure can trump a statute governing service of process in guardianship proceedings. *See Johnstone v. State*, 22 S.W.3d 408, 409 (Tex. 2000) (absent certain

20

circumstances not present here, "when a rule of procedure conflicts with a statute, the statute prevails"). The Estates Code establishes a detailed framework controlling service in these proceedings, and Section 1051.051 specifies who is authorized to serve when personal service is required. These statutory requirements cannot be overridden by a conflicting court order or by a rule of procedure of general application.

### i. Service of application for temporary guardianship

Mauricette filed her application for appointment as James's temporary guardian in Bexar County in October 2014, shortly after Juliette took James to New York. James was personally served with this application and citation in New York by Sara Clark, a private process server. Juliette contends that Estates Code Section 1051.103(a) required service by a "sheriff or other officer" and contends that Clark was neither. But, as discussed above, Section 1051.103(a) does not prescribe who may effect service. Section 1051.051 does. Because James was absent from Texas, Section 1051.051(b)(2) authorizes personal service by "a disinterested person competent to make an oath that the citation . . . was served." TEX. EST. CODE § 1051.051(b)(2). We thus reject Juliette's argument that service of the temporary-guardianship application on James was defective because he was not served by a sheriff, constable, or other elected official.

Juliette also argues that service of the application for temporary guardianship did not comply with Section 1051.051(b)(2) because the Affidavit of Service failed to establish that Clark was "disinterested." A "disinterested" person is one who is "[f]ree from bias, prejudice, or partiality" and lacks "a pecuniary interest in the matter at hand."

21

*Disinterested*, BLACK'S LAW DICTIONARY (11th ed. 2019). In her Affidavit of Service, Clark states only that she is "not a party to this action." This statement alone does not establish that Clark was "disinterested." *See Indus. Models, Inc. v. SNF, Inc.*, No. 02-13-00281-CV, 2014 WL 3696104, at *5 (Tex. App.—Fort Worth July 24, 2014, no pet.) (concluding that an affidavit stating that the person serving citation was "not a party" is insufficient to establish that person was "disinterested"); *see also* TEX. R. CIV. P. 103 (prohibiting service by someone who is *either* "a party to" a suit *or* "interested in the outcome" of a suit). Accordingly, we conclude the record does not establish that James was served by a disinterested person, as required by Section 1051.051(b)(2).[6]

### ii. Service of application for permanent guardianship

Mauricette filed her application for appointment as James's permanent guardian in December 2014, by which time James had returned to Texas. James was personally served by a private process server at the assisted-living facility in San Antonio, and, because he was served in Texas, Section 1051.051(b)(1) applies. Under that provision, personal service must be by "sheriff or constable"—a private process

---

[6] Juliette also asserts that the Affidavit of Service failed to comply with Section 1051.151, which requires the return of a person serving citation to be "endorsed on or attached to the citation." TEX. EST. CODE § 1051.151(1). For the reasons we discuss below, this additional alleged technical defect in the method of service does not affect our ultimate disposition. Therefore, we assume without deciding that the Affidavit of Service was not endorsed on or attached to the citation, as required by Section 1051.151(1).

server is insufficient.[7] Service of this application thus failed to satisfy Section 1051.051(b)(1)'s technical requirements.

## 2. Did the technical defects in service deprive the probate court of personal jurisdiction over James or void its orders?

Juliette conceded during oral argument that her complaints about service concern personal jurisdiction, not subject-matter jurisdiction. As we explain above, the probate court acquired subject-matter jurisdiction over this guardianship proceeding when Mauricette filed her initial application. *See* TEX. EST. CODE § 1022.002(d). And Juliette does not contend the probate court lacked personal jurisdiction over *her*—her complaint is that the court lacked personal jurisdiction over James. Nevertheless, Juliette asks us to hold that technical defects in personal service on the now-deceased James voided all orders in the guardianship proceeding and deprived the probate court of jurisdiction to enter any orders, including the order transferring her wrongful-death suit to the probate court. We disagree because James never complained about these defects at a time at which they could have been corrected.

---

[7] By the time James was served with the permanent-guardianship application, his court-appointed attorney ad litem had entered an appearance and filed an answer on James's behalf. Because James had an attorney of record, Section 1051.051(a) authorized service on James through that attorney by any method specified by Section 1051.055. TEX. EST. CODE § 1051.051(a). Although the record shows that a copy of the application for permanent guardianship was served on James's attorney ad litem, the record does not reflect whether this attorney was also served with citation, as the statute requires. *See id.* § 1051.103(a) (requiring James to be personally served with "citation to appear and answer an application for guardianship"). And Mauricette does not argue that service was proper through James's attorney ad litem. Therefore, we assume that James was never properly served through his attorney under Section 1051.051(a).

23

He instead entered a general appearance in the guardianship proceeding through his attorney ad litem and thereby consented to the personal jurisdiction of the probate court.

Unlike with subject-matter jurisdiction, parties can consent to the court's personal jurisdiction over them. *In re Fisher*, 433 S.W.3d at 532. One common way to consent to a court's jurisdiction is by entering a general appearance in the proceeding. A party may enter an appearance in person or by attorney. TEX. R. CIV. P. 120. Such an appearance "shall have the same force and effect as if the citation had been duly issued and served as provided by law." *Id.* Thus, a party's appearance in a lawsuit cures any defect in the method of serving that party. *Baker v. Monsanto Co.*, 111 S.W.3d 158, 161 (Tex. 2003).

The mere presence of a party or that party's attorney in court does not constitute an appearance. *See Seals v. Upper Trinity Reg'l Water Dist.*, 145 S.W.3d 291, 297 (Tex. App.—Fort Worth 2004, pet. dism'd by agr.) ("[A] party who is a silent figurehead in the courtroom, observing the proceedings without participating, has not [made a general appearance]."). Instead, a party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004). Our courts routinely hold that a court-appointed attorney who files an answer or seeks affirmative

24

action from the court invokes the court's jurisdiction and thus enters a general appearance on behalf of the client.[8]

Here, the probate court appointed an attorney ad litem to represent James's interests in the guardianship proceeding. *See* TEX. EST. CODE § 1054.001 (requiring court to appoint an attorney ad litem for the proposed ward in a proceeding for the appointment of a

---

[8] *See In re M.D.M.*, 579 S.W.3d 744, 760–61 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (attorney ad litem's participation in final parental-termination hearing on behalf of the father through questioning of witnesses and argument constituted a general appearance by the father that waived complaints regarding service); *Roberts v. Fargason*, No. 13-17-00395-CV, 2019 WL 1716803, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, no pet.) (defendant made a general appearance and waived alleged defects in service when attorney ad litem appointed to represent him while in military service filed an answer on his behalf); *In re A.L.H.*, 515 S.W.3d 60, 87 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (father in parental-termination case made a general appearance and waived any complaints about service because appointed attorney ad litem filed an answer on father's behalf); *In re D.M.B.*, 467 S.W.3d 100, 103–04 (Tex. App.—San Antonio 2015, pet. denied) (attorney ad litem's objections to evidence and objection to entry of a temporary restraining order on behalf of the father in a parental-termination hearing constituted a general appearance by the father that waived his service complaints); *In re P.Y.M.*, No. 04-13-00024-CV, 2013 WL 4009748, at *2 (Tex. App.—San Antonio Aug. 7, 2013, pet. denied) (father in parental-termination case made a general appearance and waived any complaints about service when attorney ad litem questioned a witness and presented argument on behalf of the father at the termination hearing); *Gamez v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-09-00190-CV, 2009 WL 4456150, at *5 (Tex. App.—Austin Dec. 1, 2009, no pet.) (attorney ad litem's answer and attendance at hearings and trial on behalf of mother in parental-termination case was a general appearance that waived complaints about service); *Phillips v. Dall. Cnty. Child Protective Servs. Unit*, 197 S.W.3d 862, 865 (Tex. App.—Dallas 2006, pet. denied) (filing of an answer on mother's behalf by attorney ad litem in parental-termination case was a general appearance that waived any complaints about defects in service); *In re $475,001.16*, 96 S.W.3d 625, 628–29 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (party entered a general appearance in forfeiture proceeding and waived challenges to defects in service because court-appointed attorney ad litem filed an answer on his behalf).

guardian); *see also id.* § 1002.002 (defining "attorney ad litem" as an attorney appointed by the court "to represent and advocate on behalf of a proposed ward . . . in a guardianship proceeding"). James's appointed attorney filed an answer on James's behalf. In advance of the hearing on Mauricette's application for a temporary guardianship, he filed a request that James not be required to appear at the hearing. At the hearing on the temporary guardianship, the attorney ad litem represented to the court that he had spoken with James, and he conveyed James's views regarding the guardianship to the court. He also appeared at the permanent-guardianship hearing and approved with his signature the 2015 order appointing Mauricette as James's permanent guardian.

An attorney ad litem is required by statute to review the application and relevant supporting materials; to interview the proposed ward before the appointment hearing; and to discuss with the ward, to the extent possible, the details of the case, the ward's legal options, and the ward's opinions regarding the necessity and scope of a guardianship. *Id.* § 1054.004. There is nothing in the record to suggest that this attorney's representation of James was deficient in any way. And at no time during the guardianship proceeding did James's attorney ad litem (or anyone else) assert any complaints about the manner in which James was served.

We conclude that James made a general appearance in the guardianship proceeding through the affirmative actions of his attorney ad litem. Accordingly, he consented to the probate court's personal

26

jurisdiction over him, waiving any technical defects regarding service. *See Baker*, 111 S.W.3d at 161.[9]

Amicus TCPJ correctly notes that the Estates Code provides that an attorney ad litem "may not waive personal service of citation." TEX. EST. CODE § 1051.055(e). But no one claims that occurred here—indeed, it is undisputed that James was personally served with both applications for guardianship. While Section 1051.055(e) prohibits waiving service altogether, we do not read it to prohibit a general appearance and waiver of technical service defects when the proposed

---

[9] Contrary to our dissenting colleagues' characterization, we do not suggest that technical defects in service "don't matter" and are "perfectly fine." *Post* at ___ (Devine, J., dissenting). And we emphatically do not suggest that courts are "free to ignore statutory requirements." *Id*. at __. Indeed, if anyone had alerted the probate court to a defect in service in a timely manner, the probate court could have and no doubt would have remedied the defect so as to satisfy the statute's requirements in every detail. But, alas, ours is an imperfect world—one in which no one brought the defect to the probate court's attention in time for it to be cured. The real question is thus not whether courts should ignore statutory requirements—obviously they should not and do not—but, rather, whether the statutory text expresses the Legislature's intent that anything short of strict compliance requires that the entire guardianship be voided when the attorney ad litem entered a general appearance for the ward, affirmatively invoked the probate court's jurisdiction, and ably represented the ward. The text of the Estates Code reveals no such intent, and the dissent's professed desire to read such a requirement into the statute is undermined by the Legislature's decision to allow service on a ward to be accomplished by serving his attorney of record. *See* TEX. EST. CODE §§ 1051.051(a), 1051.055(c) (providing that service on a ward's attorney may be delivered by a variety of persons, including another party, the attorney of record for another party, a sheriff or constable, or another person competent to testify). Because the Estates Code contemplates that personal jurisdiction attaches in a variety of ways that do not involve physical service on the ward by *anyone*, we cannot, in the absence of text signaling such an intent, conclude that the Legislature intended to attach jurisdictional significance to whether "the right person" serves a ward.

ward has been served and has opted through his attorney to submit to the court's jurisdiction. *See Ex parte Rodriguez*, 466 S.W.3d 846, 851 (Tex. Crim. App. 2015) (concluding that Family Code statute prohibiting juvenile from waiving "service of [the] summons" does not prohibit the waiver of defects in the manner of service).

This reading coheres with our rules, which distinguish between a defendant's appearance (which has "the same force and effect as if the citation had been duly issued and served as provided by law," TEX. R. CIV. P. 120) and a waiver of service. Rule 124 provides that a judgment cannot be rendered unless a defendant is served, or upon "acceptance or waiver of process, or upon an appearance by the defendant." TEX. R. CIV. P. 124. In short, although James's appearance in the proceeding through his attorney ad litem waived any complaints about the method of personal service, it was not a waiver of personal service of citation on James.

Juliette urges us to adopt a rule requiring strict compliance with the statutory requirements for service of a guardianship application, similar to the rule we apply when reviewing a default judgment. *See WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799 (Tex. 2021) ("For well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack." (quoting *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994))). But even in the context of default judgments (which this case is not), that rule does not apply in every case. In *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267 (Tex. 2012), we held that strict compliance with service requirements is

28

not required when a defendant seeks to void a default judgment through a collateral attack. In that case, the defendant argued that the plaintiff's failure to comply with all the requirements for service rendered the judgment void and, therefore, the default judgment could be set aside by a collateral attack. We disagreed, and we held that, because the defendant failed to establish either an absence of service or defects in service that deprived the defendant of a meaningful opportunity to appear and answer the lawsuit, the judgment was not void. *Id.* at 275.

Our holding in *PNS Stores* was designed to strike "a reasonable balance between the need for finality of judgments and the requirement that the power underlying judicial authority must be based on a litigant's fair opportunity to be heard." *Id.* at 274 (footnote omitted). Our decision here strikes the same balance. Even though the guardianship proceeding remained pending, the probate court's order appointing Mauricette as James's permanent guardian is "final" and is treated as such for purposes of appeal. *See In re Guardianship of Jones*, 629 S.W.3d 921, 925 (Tex. 2021) ("[A]n order [in a guardianship proceeding] disposing of all issues and all parties 'in the phase of the proceeding for which it was brought' is final and appealable even when the proceeding remains pending as to other issues." (quoting *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995))). Because James was personally served, and because Juliette does not allege any defects in service that rise to the level of a due process violation, none of the orders in the guardianship proceeding are void.

29

The cases cited to us in which courts have held a guardianship order void are consistent with our holding here because they involve situations where the proposed ward was never personally served. *See Gauci v. Gauci*, 471 S.W.3d 899, 902 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (concluding that a guardianship order was void because the proposed ward was not personally served with citation and therefore the probate court lacked personal jurisdiction over the ward); *In re Martinez*, No. 04-07-00558-CV, 2008 WL 227987, at *2 (Tex. App.—San Antonio Jan. 30, 2008, orig. proceeding) (holding that orders issued in guardianship proceeding were void because the proposed ward was never served with citation); *In re Guardianship of B.A.G.*, 794 S.W.2d 510, 513 (Tex. App.—Corpus Christi–Edinburg 1990, no writ) (holding that all of the trial court's actions regarding a guardianship were void because the proposed ward was never personally served).

Juliette relies on dicta in several court of appeals opinions to support her contention that a probate court acquires jurisdiction of a guardianship proceeding only following "proper service" on the ward. *See In re Guardianship of Phillips*, No. 01-14-01004-CV, 2016 WL 3391249, at *3 (Tex. App.—Houston [1st Dist.] June 16, 2016, no pet.) ("Service of citation on a proposed ward is jurisdictional and a court order appointing a guardian without proper service on the ward is void."); *In re Guardianship of V.A.*, 390 S.W.3d 414, 421 (Tex. App.—San Antonio 2012, pet. denied) ("We do not dispute the contention that a probate court lacks jurisdiction over a guardianship proceeding where the proposed ward has not been properly served."); *Whatley v. Walker*, 302 S.W.3d 314, 321 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)

30

("Failure to serve the proposed ward with citation is jurisdictional, and a court's subsequent order appointing a guardian without proper service on the ward is void."); *In re Guardianship of Erickson*, 208 S.W.3d 737, 740 (Tex. App.—Texarkana 2006, no pet.) ("[O]nly through compliance with Section 633 of the Texas Probate Code [the precursor to Estates Code Section 1051.103] is the trial court's jurisdiction invoked."). But none of these cases involved a challenge to the method by which the proposed ward was served. In *Phillips*, *V.A.*, and *Whatley*, the primary complaint was that the applicant failed to comply with a requirement to provide notice to certain third parties, including the ward's relatives. *See Phillips*, 2016 WL 3391249, at *4–5; *V.A.*, 390 S.W.3d at 418–19; *Whatley*, 302 S.W.3d at 322. None of the courts in those cases voided any orders for lack of jurisdiction, nor did they conclude that a defect in service deprived the probate court of jurisdiction.[10]

\* \* \*

---

[10] In *Erickson*, the court of appeals held that the probate court lacked jurisdiction not because of a service defect, but because the court failed to wait the required ten days after service before acting on the application for guardianship. 208 S.W.3d at 740–41; *see* TEX. EST. CODE § 1051.106 ("The court may not act on an application for the creation of a guardianship . . . earlier than the Monday following the expiration of the 10-day period beginning on the date service of notice and citation has been made . . . ."). Thus, *Erickson* does not support Juliette's argument that a defect in the method of service on a proposed ward automatically deprives the probate court of jurisdiction over the guardianship proceeding. *Erickson* is also inconsistent with the presumption that failure to comply with a mandatory statutory requirement is not jurisdictional unless there is clear legislative intent to the contrary. *See, e.g.*, *City of DeSoto*, 288 S.W.3d at 394; *see also In re Guardianship of Jordan*, 348 S.W.3d 401, 408–10 (Tex. App.—Beaumont 2011, no pet.) (calling into question the court's holding in *Erickson* based on *City of DeSoto* and other decisions from this Court).

31

We conclude that the probate court obtained subject-matter jurisdiction over this guardianship proceeding when Mauricette filed her application for temporary guardianship and retained subject-matter jurisdiction after James's death. We also conclude the probate court properly exercised personal jurisdiction over James and the technical defects in service did not void the probate court's orders because it is undisputed that James was personally served with the applications for guardianship, James entered a general appearance and participated in the proceedings through his attorney ad litem, and Juliette failed to establish that any deficiency with respect to the method of personal service rose to the level of a violation of due process. We therefore affirm the court of appeals' judgment.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** March 4, 2022